UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMERICAN BANK AND TRUST CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-CV-0416-CVE-FHM |
| | ) |
| BOND INTERNATIONAL LIMITED, | ) |
| DAVID K. BOND, and | ) |
| AKKEL HOLDINGS LIMITED, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is Plaintiff American Bank and Trust Co.'s Motion for Summary Judgment and Combined Brief in Support (Dkt. # 29). Plaintiff American Bank and Trust Co. ("American") moves for summary judgment on its claims for breach of contract, breach of promissory note, breach of guaranty, and foreclosure related to two promissory notes issued to Bond International Limited ("Bond BVI"). Defendants argue that the promissory notes and accompanying guaranties signed by David K. Bond ("Bond") and Akkel Holdings Limited ("Akkel") are void under federal law.

### I.

American is a bank with its principal place of business in Tulsa, Oklahoma, and it had developed an ongoing relationship with Bond, the president and chief executive officer of Bond BVI. Bond BVI and its subsidiaries lease intermodal tanks, containers and chassis for transportation and shipping. Bond operates primarily out of London, England, but his companies are spread out across several locations internationally. Bond BVI and American entered a series of loans from 1995 to 1999. The most substantial transaction between the parties was a $25 million loan in March

1999. The parties executed a credit agreement and security agreement for the loan, but American also asked Akkel and Bond to execute guaranties to secure the loan. Akkel, the sole stockholder of Bond BVI, executed on March 23, 1999 a blanket guaranty ("Akkel Guaranty") for any amounts that Bond BVI borrowed from American. The guaranty provides that "AKKEL does hereby unconditionally and irrevocably agree that if any of the Obligations . . . are not satisfied when due . . . AKKEL shall upon demand by American forthwith satisfy all of the Obligations." Dkt. # 2, Ex. E, at 1. Even though the Akkel Guaranty was executed on March 23, 1999, the guaranty stated that it would apply to any indebtedness, including notes, that "are now, or at any time hereafter may be or become, owing to AMERICAN" from Bond BVI. Id. On March 23, 1999, Bond agreed to execute a personal guaranty ("Bond Guaranty") for any sum borrowed by Bond BVI, in exchange for a 0.25% reduction in the interest rate on the $25 million loan between American and Bond BVI. The Bond Guaranty and the Akkel Guaranty each contained a severability clause providing:

> In the event any one or more of the provisions contained in this Guaranty is determined to be invalid, illegal, or unenforceable in any respect, the validity, legality, or enforceability of the remaining provisions herein and therein shall not in any way be affected or impaired thereby.

Id., Ex. D, at 7; Id., Ex. E., at 7. In addition, both guaranties state that they "shall be fully enforceable against [Bond or Akkel] irrespective of . . . the genuineness, validity, regularity, or enforceability of the Obligations or of the Loan Documents or any other writing evidencing or securing" the indebtedness." Id., Ex. D, at 2; Id., Ex. E., at 2.

On February 27, 2003, Bond BVI executed a promissory note ("February Note") in favor of American in the principal amount of $241,379.39. Bond BVI agreed to repay the February Note in 11 monthly installments of $4,500 and a final payment of any remaining principal and interest. The parties subsequently modified the February Note to extend the time for repayment until April 4,

2006. On October 20, 2003, Bond BVI executed a second promissory note ("October Note") in favor of American in the principal amount of $350,000. The October Note was repayable in two monthly installments of $6,500 and a final payment on January 20, 2004 of the full amount remaining. American agreed to a modification of the October Note to extend its maturity date to April 4, 2006.

The February Note and the October Note were accompanied by a security agreement specific to each note. As security for the February Note, Bond BVI assigned American "all leases, lease income, accounts, contract rights, and general intangibles resulting from the equipment leases" for 35 intermodal tanks. Dkt. # 2, Ex. H, at 1. To secure the October Note, Bond BVI assigned leases, lease income, accounts, contract rights, and general intangibles related to 25 additional intermodal tanks to American. Part of the collateral used for the February Note and the October Note is held by Havana Club International, S.A. ("Havana Club"). In total, Bond BVI and its subsidiaries leased approximately 50 intermodal tanks and chassis to Havana Club. Of those 50 tanks, American states that three tanks were used as collateral for the February Note and the October Note. The security agreement for each note included a severability provision:

> SEPARABILITY OF PROVISIONS. If any provision of this Agreement shall for any reason be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid or unenforceable provision had never existed.

Id.; Id., Ex. K, at 1. The February and October Notes also permitted American to use collateral from past and future transactions between the parties to secure these loans:

> COLLATERAL. This Note and all other obligations of Debtor to Lender, including renewals and extensions, are secured by all collateral securing this Note and by all other security interests and mortgages previously or later granted to Lender and by all money, deposits and other property owned by any Debtor and in Lender's possession or control.

Id., Ex. F, at 1; Ex. I, at 1. As additional security for the notes, Bond executed a guaranty on behalf of Bond BVI ("Bond BVI Guaranty") stating that Bond BVI would "fully and promptly pay or otherwise discharge all indebtedness and other obligations . . . upon which [Bond BVI] now is or may later . . . become obligated to Lendor as principal, guarantor, endorser, or in any other capacity. . . ." Dkt. # 2, Ex. C, at 1.

Bond BVI defaulted on the February Note and the October Note when it failed to pay the full amount of outstanding principal and interest by April 4, 2006. American states that it is the current holder of the February Note, the October Note, the Akkel Guaranty, the Bond Guaranty, and the Bond BVI Guaranty. On August, 10, 2006, American filed this lawsuit to recover any outstanding amounts on the notes and, if necessary, foreclose on collateral to satisfy a judgment. Before this case was filed, American had filed a separate lawsuit, American Bank and Trust Co. v. Bond International Limited, 06-CV-317-CVE-FHM ("Companion Case"), to collect on the $25 million loan between American and Bond BVI. In the Companion Case, the defendants, including Bond BVI, Akkel, and Bond, argued that the entire loan agreement was void under the Trading with the Enemy Act, 50 U.S.C. App. § 1, et seq. ("TWEA"), and the Cuban Assets Control Regulations, 31 C.F.R. § 515.101 et seq. ("CACR").

Defendants' argument concerning the applicability of the TWEA and the CACR was initially raised in connection with American's motion to appoint a receiver in the Companion Case. The Court granted American's motion to appoint a receiver but limited the receiver's authority to manage collateral in the possession of Havana Club:

> The Court finds that it may not enforce American's security interests in tanks leased by the Havana Club, the proceeds of the leases, or any other interest American may claim. This does not invalidate the provisions of the loan documents related to this security agreement. It is simply beyond the power of the Court to enforce the agreement in a way that would

>  infringe on the power of [the Office of Foreign Asset Control] to regulate trade with a foreign nation. Therefore, the Court will appoint a receiver but the Court may not grant the receiver powers to use, dispose of, collect payment, or hold any other power associated with the collateral leased to the Havana Club or the proceeds of such leases unless plaintiff obtains a license from [the Office of Foreign Asset Control] quoting the necessary authority to conduct business with Havana Club.

American Bank & Trust Co. v. Bond Int'l Ltd., 464 F. Supp. 2d 1123, 1129 (N.D. Okla. 2006). Defendants raised this same argument again in the Companion Case in the context of American's motions for summary judgment on its claims for breach of contract, breach of promissory note, breach of guaranty, and foreclosure. See American Bank and Trust Co., 06-CV-317, Dkt. ## 62, 73, 84. In each instance, the Court affirmed its ruling that the TWEA did not invalidate the loan agreement and, even if a specific loan provision were invalid under the TWEA, the credit agreement contained a severability provision as to any unenforceable provision. Given that the purpose of the CACR was to prevent American money from flowing to Cuba, there was nothing inherently illegal about the loan agreement as a whole. Id., Dkt. # 62, at 6-7. Applying Oklahoma law, the Court held that the severability provisions were enforceable and the loan documents could be enforced without reference to collateral leased to Havana Club. On March 13, 2007, the Court entered a judgment in favor of plaintiff and against defendants on all claims.[1]

Bond BVI, Bond, and Akkel have raised the same argument again in this case, and assert that the promissory notes are invalid because part of the collateral used to secure the notes is held by Havana Club. American claims that defendants are precluded from relitigating a legal issue that was conclusively decided in the Companion Case. Plaintiff also argue that, even if issue preclusion does

---

[1] Defendants have appealed the judgment in the Companion Case solely on the basis that the Court erred when it determined that the TWEA and the CACR did not invalidate the entire loan agreement.

5

not apply, the same law applies to defendants' argument as in the Companion Case, and defendants' defense should be overruled on the merits.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Kaul v. Stephan</u>, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Durham v. Xerox Corp.</u>, 18 F.3d 836, 838-39 (10th Cir. 1994).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

American argues that the legal issue raised in defendants' response has already been decided in the Companion Case and, under the doctrine of collateral estoppel, the parties may not relitigate the same issue in this case. Defendants argue that the February Note and the October Note are void under the TWEA and the CACR, because American obtained a security interest in collateral held by a Cuban corporation, and they claim that this precise legal issue was not actually litigated in the Companion Case.[2] Defendants have not raised any other defense to the enforceability of the promissory notes in their response, and defendants' default is conclusively established by the undisputed material facts in plaintiff's motion for summary judgment.

### A.

American asserts that defendants are barred from relitigating the same legal defense raised in the Companion Case under the doctrine of issue preclusion or collateral estoppel. Specifically, plaintiff claims that defendants may not assert their legal objection that the loan documents are void

---

[2] After reviewing defendants' response, the Court finds that defendants have not disputed any of the material facts stated in plaintiff's motion for summary judgment. Pursuant to LCvR 56.1, "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted" by the party opposing summary judgment. Therefore, the material facts stated in plaintiff's motion are deemed admitted.

7

under the TWEA and the CACR, because the Court ruled on this argument in previous litigation involving the same parties. In the Companion Case, the Court clearly held that the loan agreement and accompanying documents were not void simply because American accepted a security interest in collateral leased to the Havana Club.[3] Defendants argue that this case is not identical to the Companion Case, and this precise legal issue was not adjudicated in the Companion Case. They claim that the doctrine of collateral estoppel does not bar defendants from asserting a defense under the TWEA in this case.

Issue preclusion or collateral estoppel prevents relitigation of issues that were decided in a previous case, and the preclusive effect of a federal court judgment, even if the underlying claims were created under state law, is determined by reference to federal law. Orjias v. Stevenson, 31 F.3d 995, 1010 (10th Cir. 1994). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Dodge v. Cotter, 203 F.3d 1190, 1198 (10th Cir. 2000) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). The party raising issue preclusion has the burden to prove four elements:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1093 (10th Cir. 2003). Issue preclusion bars relitigation of an issue, even if the issue "arises when the party pursuing or defending against a different claim." Park Lake Resources Ltd. Liability Co. v. United States Dept. of Agriculture, 378

---

[3]  In its motion for summary judgment, plaintiff has withdrawn any request for summary judgment of foreclosure on collateral held by Havana Club. Dkt. # 29, at 1.

F.3d 1132, 1136 (10th Cir. 2004). When multiple cases between two parties involved substantially similar subject matter, issue preclusion may be used to prevent the relitigation of factual and legal issues identical to both cases. Jarvis v. Nobel/Sysco Food Servs. Co., 985 F.2d 1419, 1425 (10th Cir. 1993).

Defendants claim that the first element of issue preclusion is not present, because the issues raised in this case are not identical to the issues actually litigated in the Companion Case. The basis for defendants' argument is that "there is no mutual identity between the issues involved in the current and prior litigation." Dkt. # 32, at 3. Contrary to defendants' assertions, issue preclusion frequently applies when parties litigate different claims for relief, because it relieves the parties "of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 414-15 (1980); see also Gener-Villar v. Adcom Group, Inc., (1st Cir. 2005) (issue preclusion prevents relitigation of an issue in a subsequent action if the issue was essential to the judgment in a prior case even if the claims for relief are different); United States v. Bailey, 957 F.2d 439, 443 (7th Cir. 1992) (issue preclusion rather than claim preclusion is the appropriate doctrine to prevent relitigation of identical issues in different claims for relief). The Court must find that the issues involved in both cases are identical, but the fact that the Companion Case involved a separate transaction does not prevent the application of issue preclusion in this case.

The application of collateral estoppel in this case depends solely on how the Court defines the issue, because there is no dispute as to the presence of the final three elements for issue preclusion under Tenth Circuit precedent. The prior action has been fully adjudicated on the merits and the same parties were involved in both cases. The Court entered judgment in the Companion

Case on March 13, 2007, and defendants' liability to plaintiff is firmly established. Defendants had a full and fair opportunity to litigate their affirmative defense based on the TWEA and the CACR, as evidenced by the fact that the Court filed four written opinions addressing this defense in the Companion Case. This leaves only the first element of issue preclusion. The Court has considered the arguments of the parties, and it finds that the specific legal issue decided in the Companion Case is best stated as follows:

> Whether a borrower who posts collateral as security for a loan can claim that the illegality of a portion of the collateral under the TWEA and the CACR invalidates the underlying loan documents and negates the indebtedness when the parties included severability provisions in the loan documents?

If this issue is identical to the legal issue raised in this case, defendants are precluded from raising a defense under the TWEA and the CACR based on the Court's decision in the Companion Case.

To determine whether the identical issue has been adjudicated in a previous action, there are four factors listed in the Restatement (Second) of Judgments § 27:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
>
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
>
> (4) how closely related are the claims involved in the two proceedings?

Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904 (9th Cir. 1997) (quoting Restatement of Judgments (Second) § 27). The Tenth Circuit has cited section 27 of the Restatement (Second) of Judgments with approval, and the Court will apply the four factor test from the Restatement. See Adams, 340 F.3d at 1094; United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002);

Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1208 (10th Cir. 2001); Jarvis, 985 F.2d at 1425.

Applying those four factors, the Court finds that the issue presented in this case is identical to the issue raised in the Companion Case. There is a substantial overlap between the evidence and arguments in both cases. With the exception of the additional February Note, October Note, and the security agreements accompanying each note, the Court necessarily had to review the documents at issue in this case when it reached its decision to deny defendants' argument concerning the TWEA in the Companion Case. The same rule of law is applicable to both cases, and the Court has already cited that law in its rulings in the Companion Case. See American Bank & Trust Co., 464 F. Supp. 2d at 1127-29. In both cases, the parties should have produced almost identical documents during discovery, i.e., the underlying documents for the $25 million loan and the February and October Notes. While the February Note and the October Note were not relevant to the Companion Case, the same blanket guaranties apply to all transactions. Even though the cases involve separate loans, the transactions were part of an ongoing relationship between the parties, as evidenced by the fact that Bond and Akkel each executed one blanket guaranty. The legal issue raised by defendants' defense under the TWEA and the CACR is identical, and there is no material difference between defendants' argument in the two cases.

Defendants argue that issue preclusion is inapplicable because "the issues involved in the current litigation are separate and distinct from those previously litigated." Dkt. # 32, at 3. The basis for defendants' argument is that the Court must review additional loan documents in order to rule on plaintiff's claims in this case. However, implicit in this argument is that the Court must review many of the same documents that were considered in the Companion Case. In the

11

Companion Case, the Court made a specific finding that the loan documents, including the Bond Guaranty and the Akkel Guaranty, were enforceable, but that the Court would not exercise authority over collateral held by Havana Club. American Bank & Trust Co., 06-CV-317, Dkt. # 36, at 9; Dkt. # 62, at 5-6; Dkt. # 84, at 5. Defendants do not specify what additional documentation might prevent the application of issue preclusion, but plaintiff admits that the February Note and the October Note were not at issue in the Companion Case. The existence of additional documents or new claims for relief does not prevent the application of issue preclusion as long as the new defense is "based on the underlying issue already decided." Matosantos Commercial Corp., 245 F.3d at 1208 (determination that defendant had not assumed or represented it would assume a management contract precluded relitigation of new claims on same issue). It is not a factual issue that is being precluded, but a purely legal issue as to a defense that is identical to both cases, and the presence of additional documentation does not change the result of the legal analysis stated in the Companion Case.

Defendants cite several cases, including one Tenth Circuit case, where courts refused to apply issue preclusion. However, in each case, the court found that issue preclusion did not apply because of a material factual distinction between the prior and subsequent litigation. See Rybarcyzk v. TRW, Inc., 235 F.3d 975, 981-82 (6th Cir. 2000) (amendment to employee retirement plan in 1986 prevented application of issue preclusion based on a prior case construing plan language before 1986); City National Bank of Fort Smith, Arkansas v. Unique Structures, Inc., 49 F.3d 1330, 1334 (8th Cir. 1995) (summarily refusing to apply issue preclusion because the plaintiff had not previously attempted to litigate the commercial reasonableness of sales for the 27 contracts at issue in the subsequent case); Pardo v. Olson & Sons, Inc., 40 F.3d 1063, 1066-67 (9th Cir. 1994) (issue

12

preclusion could not be used to prevent subsequent litigation against the manufacturer of a truck bed based on a prior finding that a crane manufacturer was not liable to the plaintiff). Defendants primarily rely on Kortz v. Guardian Life Ins. Co. of America, 144 F.2d 676 (10th Cir. 1944). In Kortz, the plaintiff obtained a judgment for health benefits up to March 21, 1939 based on a finding of permanent and total disability. Id. at 677. The plaintiff subsequently filed a lawsuit against the insurer for benefits after March 21, 1939, and he argued that the insurer was precluded from contesting the previous court's finding that the plaintiff was disabled. The Tenth Circuit held that the time frame for the two cases was distinct, and a finding of total disability in prior litigation did not foreclose subsequent litigation concerning the plaintiff's right to future benefits under the policy. Id. at 677-78. Kortz is clearly distinguishable from the present case, because the fact of a person's disability is subject to change over time. In this case, defendants' defense based on the TWEA and the CACR will not change regardless of how many tanks defendants have leased to Havana Club or when American acquired a security interest in that collateral. Any factual distinction between the two cases is immaterial, and the Court's ruling on the applicability of the TWEA in the Companion Case is binding on the same parties in this case.

The Court finds that defendants' legal argument that the promissory notes, guaranties, and other loan documents are void under the TWEA and the CACR is identical to the legal issue decided four times in the Companion Case. The Court has clearly ruled that American's security interest in collateral leased to Havana Club does not invalidate any agreement or document exchanged by the parties and, even if a specific provision were unenforceable, the provision could be severed without terminating any loan agreement between the parties. Although the Court must consider some additional documentation in this case, any factual differences between the two cases

13

are not material to defendants' legal argument that any agreement between the parties is void under the TWEA.[4]  The elements of issue preclusion have been established and defendants are foreclosed from arguing that the TWEA invalidates the entire agreement between the parties.  As in the Companion Case, the Court will not enter a judgment granting American any authority to dispose of collateral held by Havana Club, but the Court finds that the loan documents and promissory notes are enforceable in all other respects.

**B.**

Even if the Court were to conclude that issue preclusion did not apply, plaintiff would still be entitled to summary judgment on its claims for breach of contract, breach of promissory note, breach of guaranty and foreclosure.  Assuming that some part of the collateral used to secure the February and October Notes qualifies as a transfer under the CACR, the clear intent of the parties was that any unenforceable provision should be severed to preserve the validity of the agreement as a whole. Because there is some additional documentation in this case that was not present in the Companion Case, the Court will consider the effect of the severability provisions in the security agreements and documents specifically applicable to this case.

Although the Court has found that defendants are precluded from raising a legal defense under the TWEA and the CACR, the Court finds that it reaches the same result as in the Companion Case when the merits of defendants' argument are considered.  In Section I of this Opinion and Order, the Court set forth the severability provisions from the February Note, the October Note, the

---

[4]  Defendants' argument in this case is a skeletal version of the same arguments advanced in the Companion Case.  It appears as if defendants are assuming the Court is familiar with this line of argument, and that it is unnecessary to fully brief the issue in response to American's motion for summary judgment.

security agreements for those notes, and the Bond and Akkel Guaranties. The security agreements for the notes provide that the invalidity or unenforceability of any provision "shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid or unenforceable provision had never existed." Dkt. # 2, Ex. H, at 1; Id., Ex. K, at 1. The Bond Guaranty and the Akkel Guaranty both contained severability provisions stating that the illegality or invalidity of any provision would not affect or impair the enforceability of any remaining provisions. In addition, the guaranties provided that they would be enforceable even if the underlying loan documents were declared invalid.

As in the Companion Case, the Court will consider the purpose of the CACR when considering the enforceability of the severability provisions in this case. The principal purpose of the CACR "was to deny Cuba access to American dollars which finance acts of aggression or subversion." Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 361 (11th Cir. 1984). Defendants characterize the entire loan agreement as a transfer that is void under the CACR. See 31 C.F.R. § 515.203(a) ("Any transfer after the 'effective date' which is in violation of any provision of this part or any regulation, ruling, instruction, license, or other direction or authorization thereunder and involves any property in which a designated national has or has had an interest since such 'effective date' is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property.").

The CACR does not provide specific guidance concerning the enforceability of a contract if a specific contractual provision is held to be invalid, so the Court will refer to state contract law on the severability of an unenforceable provision. Oklahoma law provides that a contract provision is severable if the provision is not an essential part of the agreement and the remainder of the

15

contract can still be enforced. City of Bixby v. State ex rel. Dept. of Labor, 934 P.2d 364 (Okla. Civ. App. 1996). The key factor in determining whether a contract provision is severable is the intent of the parties. Sunrizon Homes, Inc. v. American Guar. Inv. Corp., 782 P.2d 103, 107 (Okla. 1988). The clear intent of the parties was to sever any provision that was later found to be unforceable, as evidenced by the severance provision contained in the Bond Guaranty, the Akkel Guaranty, and the security agreements for the February Note and the October Note. In addition, American's security interest in property leased to the Havana Club is not an essential part of the notes, and, should the Court prevent American from enforcing its security interest against Havana Club, the promissory notes are still intact. The purpose of the CACR was to prevent American funds from flowing to Cuban nationals, but the defendants have not shown that the CACR requires the Court to invalidate the notes and security interests between the parties to further this purpose. The Court would not declare the February Note or the October Note invalid under the CACR, because American's security interest in tanks leased to Havana Club is severable from the rest of the parties' agreements.

**C.**

The undisputed material facts set forth in plaintiff's motion for summary judgment show that American is entitled to summary judgment on its claims for breach of contract, breach of promissory note, breach of guaranty against Bond and Akkel, and foreclosure. It is undisputed that defendants are indebted to American on two loans in the original principal amounts of $241,379.39 and $350,000 respectively, and that American is the holder of the February Note, the October Note, and the Akkel Guaranty, the Bond Guaranty, and the Bond BVI Guaranty securing each loan. Each note was accompanied by a security agreement providing American a security interest in intermodal tanks

leased by defendants. Aside from their defense under the TWEA and the CACR, defendants have no other defense to enforcement of the February Note and the October Note. Defendants have not disputed plaintiff's statements of material fact that defendants have defaulted on the loans, and the Court finds that defendants' default is admitted for purposes of ruling on plaintiff's motion for summary judgment. Plaintiff is not seeking a judgment of foreclosure on collateral held by Havana Club, and the Court finds no other issue barring summary judgment in favor of plaintiff. Therefore, summary judgment should be entered in favor of plaintiff on its claims for breach of contract, breach of promissory note, breach of guaranty against Akkel and Bond, and foreclosure.

**IT IS THEREFORE ORDERED** that Plaintiff American Bank and Trust Co.'s Motion for Summary Judgment and Combined Brief in Support (Dkt. # 29) is **granted**. Counsel for plaintiff shall submit a proposed judgment as to all claims, except as to foreclosure on the tanks leased to Havana Club, approved as to form by counsel for defendants, to the CM/ECF Intake Box as a Word Perfect document not in .pdf format, no later than **May 24, 2007**.

**IT IS FURTHER ORDERED** that all remaining deadlines, including pretrial conference and jury trial, are hereby **stricken.**

**DATED** this 8th day of May, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT